UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KATOHNA D. WISDOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 20 CV 1837 DDN |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Katohna Wisdom for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born on November 25, 1989, and protectively filed her applications for DIB on July 26, 2018. (Tr. 121.) Plaintiff had filed an earlier application alleging she became disabled beginning May 12, 2014. (Tr. 84.) On September 27, 2016, an administrative law judge (ALJ) denied the earlier application. (Tr. 81-102.) In this case, plaintiff alleges that she has been unable to work since May 12, 2014, prior to the denial

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. See 42 U.S.C. § 405(g) (last sentence).

of her earlier claim.  The ALJ in this case acknowledged her earlier claim but expressly declined to reopen it.  (Tr. 11-12.)   In her Disability Report, plaintiff alleged disability due to anxiety, dyslexia, stomach acid, depression, and back problems.  (Tr. 222.)  Her claims were denied, and she requested a hearing before an administrative law judge (ALJ).  (Tr. 81-102.)

On March 27, 2020, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act.  (Tr. 8-28.)  The Appeals Council denied review.  (Tr. 1-5.)  Accordingly, the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

Treatment notes from May 2016 through February 2017 note diagnoses of generalized anxiety disorder, adjustment disorder with mixed anxiety, dependent personality disorder, and depression.  (Tr. 277-79.)

In April 2018, plaintiff underwent a mental status examination during a compensation and pension examination with clinical psychologist David Van Pelt, Psy.D.  Plaintiff exhibited a hyper and anxious mood but was cooperative and forthcoming with information and appeared upbeat and positive.  During a psychiatric evaluation with Dr. Van Pelt a few days later, plaintiff said that her last job was working at a gas station for two weeks in 2014, but she quit the job due to her anxiety and fear of being around people.  Dr. Van Pelt summarized plaintiff's issues as "occupational and social impairment with reduced reliability and productivity."  (Tr. 301.)  Plaintiff reported having no relationship with her parents or 11 younger half and step siblings, although she reported a close relationship with her grandparents with whom she resided.  (Tr. 301-05.)

Plaintiff underwent a post-traumatic stress disorder (PTSD) screening testing in May 2018 with registered nurse Casey Shepard.  She reported nightmares, being on guard, trying not to think of situations, and feeling numb or detached.  (Tr. 299.)

In June 2018, during a psychotherapy session with psychiatrist Dilip Gogineni, M.D., plaintiff reported that Sertraline helped her anxiety, but the dosage was recently reduced because it was worsening her depression.  A mental status examination revealed good eye contact, normal speech, linear thought process, good insight and judgment, and congruent fund of knowledge.  Plaintiff described her mood as "alright," and her affect was appropriate.  Dr. Gogineni decreased her Sertraline and recommended continued counseling.  (Tr. 294-97.)

Plaintiff met with social worker Marilyn Shoumake later that month.  Plaintiff stated she was there only because her doctor wanted her to give therapy another try.  She said that she did not request therapy and had no idea why her doctor suggested it.  Ms. Shoumake tried a variety of ways to ask plaintiff what she wanted to address in therapy, but plaintiff repeatedly answered that she didn't know.  Plaintiff spoke in a childlike way and focused on her new puppy, which she said she was training to be a service dog.  She stated she felt more comfortable socially with a dog than she did alone.  She reported she had made progress socially and had made friends with an elderly neighbor.  Although she had considered taking an occasional class to get out of the house, she was currently more focused on her grandparents' health issues.  Although plaintiff complained of panic attacks with shortness of breath, she related being excited about a friend's upcoming visit and shared plans to go to Dave and Busters, Six Flags, bingo, Flying Spider, and a barbecue, and that she had purchased $700.00 in fireworks.  (Tr. 291-92.)

Ms. Shoumake's examination findings showed plaintiff had normal speech and good mood and affect.  She displayed no auditory or visual hallucinations or behavioral disturbances.  She demonstrated some increased animation at times consistent with a tendency of immaturity.  She had no obvious deficits with fund of knowledge.  Plaintiff declined scheduling further appointments.  (Tr. 290-91.)

In August 2018 plaintiff told Dr. Gogineni that she was active taking care of her dog and cat and helping her grandparents. She had good eye contact, a dysphoric mood, and an appropriate affect. Her speech was normal, and thought process was linear. She reported no suicidal ideations and displayed no psychomotor agitation. Her fund of knowledge was congruent with her education level, and she had good insight and judgment. Her medications were continued, and Dr. Gogineni told her to return in four months. (Tr. 282-84.)

On September 11, 2018, plaintiff completed a Function Report, assisted by her grandmother, Cheryl Gentry, and reported the following. (Tr. 228-38.) Her panic attacks are triggered by close contact with other people. Her grandmother needs to remind her to do many things, including bathing, grooming, taking her medications, and doing chores. She can prepare easy meals and does so about once a month although she used to cook more frequently. She can take out the trash and care for her dog. She goes out alone only when necessary; her grandparents usually drive her around. Her hobbies and interests include watching television and hanging out with her grandparents. She doesn't feel like engaging in sports or going out with friends. She doesn't socialize with anyone on a regular basis. She doesn't follow written instructions very well and is better with oral instructions. She is ok with authority figures "up to a point." She doesn't handle stress or changes in routine well. *Id*.

In December 2018 plaintiff described her anxiety as "even" and said she was doing breathing exercises. She reported depression due to pain in her teeth and sleep issues. She was maintaining her weight and had adequate motivation and fair concentration. She had no reported memory problems, hopelessness, or suicidal ideations. She had good eye contact, normal speech, euthymic mood, and appropriate affect. She had normal speech and no thought disorder or psychomotor abnormalities. Her insight and judgment were good. Dr. Gogineni noted plaintiff was stable, responding well to treatment, and he continued her medications. (Tr. 751-54.)

On September 27, 2019, Dr. Gogineni completed a checkbox form titled "Medical Opinion Re: Ability to do Work-Related Activities (Mental)." Dr. Gogineni stated plaintiff was a veteran with general anxiety disorder and gastroparesis and chronic vomiting who has been unable to work since 2009. Dr. Gogineni opined that plaintiff had no useful ability to function in 22 of 25 categories of mental functioning and was unable to meet competitive standards in the remaining three categories. He also opined that plaintiff would be absent from work more than four days per month. (Tr. 761-62.)

## **ALJ HEARING**

On December 10, 2019, plaintiff appeared and testified to the following before an ALJ. (Tr. 30-80.) She lives with her grandparents. Her grandmother does most of the chores, but she helps when necessary. She takes out the trash and cooks simple meals. She does her own laundry and goes grocery shopping with her grandmother. She has a driver's license with no restrictions. She has a cat and a dog, and her grandparents have a cat as well. She can walk her dog. She has two friends that she met through her dog. One is a dog trainer, the other is a groomer. She goes to sit-down restaurants with her grandparents. (Tr. 39-44.)

She believes she is disabled because of her stomach issues, anxiety, and depression. She has "miniature" panic attacks every hour and major ones two to five times per month. Her panic attacks are triggered by crowds, being touched, and excitement. She can't stand to be around people. Her depression causes fatigue and suicidal thoughts. She can't sleep because her mind is constantly racing. (Tr. 37-39, 48, 54.)

Plaintiff's grandmother, Cheryl Gentry, also testified to the following at the hearing. Plaintiff stays in her room a lot and can only focus on something such as watching television or reading a book for about 20 minutes. She has two friends that she spends time with at least once a week. She is afraid of people and doesn't know how to treat them, although she does "pretty well" when they go out to eat. She makes sure plaintiff goes to

her psychiatric appointments, and she thinks plaintiff's psychiatrist has her medications correct right now. It never occurred to her to seek a guardianship of plaintiff. (Tr. 60-66.)

## **DECISION OF THE ALJ**

On March 27, 2020, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 8-28.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity between September 23, 2016, and March 31, 2019, her date last insured. At Step Two, the ALJ found that plaintiff had the severe impairments of adjustment disorder, anxiety disorder, posttraumatic stress disorder, and personality disorder. At Step Three, however, the ALJ determined that plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of listed impairment equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 14-15.)

The ALJ found plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with non-exertional limitations. She can perform simple, routine tasks in a work environment but with no fast-paced production requirements. She could not have direct interaction with the public but could have casual and infrequent interaction with coworkers and occasional interaction with supervisors. She could not be exposed to hazards such as unprotected heights or moving mechanical parts. (Tr. 16-17.)

Based on vocational expert testimony, the ALJ concluded that plaintiff could not perform her past relevant work but could perform other work existing in significant numbers in the national economy, including the unskilled work of marker, routing clerk, and shipping and receiving weigher. Consequently, the ALJ found that plaintiff was not disabled. (Tr. 23-24, 73-75.)

## GENERAL LEGAL PRINCIPLES

In reviewing the Commissioner's denial of an application for disability insurance benefits, the Court determines whether the decision complies with the relevant legal requirements and is supported by substantial evidence in the record. *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Cox v. Astrue,* 495 F.3d 614, 617 (8th Cir. 2007). The review considers not only the record for the existence of substantial evidence in support of the Commissioner's decision. It also considers the record evidence that fairly detracts from that decision. *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998). We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pates-Fires*, 564 F.3d at 942.

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). *Id.* §

- 7 -

404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to do so. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

Plaintiff asserts the ALJ erred (1) in failing to find that her mental impairments satisfied the criteria of listings for mental disorders, specifically the paragraph B criteria; (2) in evaluating the opinion evidence of treating psychiatrist Dr. Gogineni because the ALJ failed to explain how the supportability and consistency factors were considered; and (3) in failing to consider evidence from non-medical source Cheryl Gentry.

### Mental Impairments Paragraph B Criteria

At Step Three of the sequential evaluation, the ALJ found that plaintiff's impairments did not satisfy a listing. Plaintiff argues that the ALJ should have found that she met Listings 12.04 (depressive, bipolar, and related disorders) and 12.15 (trauma and stress-related disorders). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.15. She argues the evidence as a whole shows her limitations are "marked," meeting the B criteria.

At the third step of the sequential evaluation, the ALJ considers whether the claimant meets the criteria of a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The claimant has the burden to establish that an impairment meets a listing. *Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004). The listings describe conditions "severe enough to prevent an individual from doing *any* gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a) (emphasis added). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis added). "An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." *Id.*

Sections 12.04 and 12.15 have three paragraphs, including symptom criteria in paragraph A, and limitation criteria in paragraphs B or C. Regardless of whether plaintiff satisfies the paragraph A criteria,[2] she is not disabled unless she also satisfies paragraph B or paragraph C.

Plaintiff argues she satisfies the paragraph B criteria for Listings 12.04 and 12.15. Paragraph B requires "marked" or "extreme" functional limitations. Specifically, plaintiff must show she has an extreme limitation of one or a marked limitation of two of four domains: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04.B, 12.15B.

The ALJ found that plaintiff did not satisfy the paragraph B criteria because she had only moderate limitations in the four domains. (Tr. 15-16.) The Commissioner argues substantial evidence supports the ALJ's findings. This Court agrees.

Regarding plaintiff's ability to understand, remember, and apply information, the ALJ noted that in her function report, plaintiff stated that her grandmother reminded her to do things such as take her medication. Plaintiff also reported some difficulty with written instructions, understanding, and memory. However, treatment records noted no cognitive deficits, and plaintiff had no deficits in her fund of knowledge. She did not report memory problems in treatment. Nor was there any evidence of short-term or long-term memory impairment or issues with recall. (Tr. 15, 229-33, 283, 290, 751.)

As to plaintiff's ability to interact with others, the ALJ noted that in her function

---

[2] To meet the symptom criteria under Listing 12.04, plaintiff must provide medical documentation of five or more symptoms of depressive disorder or three or more symptoms for bipolar disorder, which are listed under paragraph A. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. To meet the symptom criteria under Listing 12.15, plaintiff must provide medical documentation of all five symptoms listed under paragraph A. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15.

report, plaintiff said that she was nervous and had panic attacks when she was around people.  (Tr. 15, 228, 232.)  She also reported that she got along with authority figures "up to a point." (Tr. 233.)  She told her providers that she was afraid of people and didn't like people touching her. (Tr. 290, 303.)  However, she became friends with an elderly neighbor and became more social after getting a puppy.  (Tr. 291-92.)  She expressed excitement about a friend's upcoming visit and listed numerous planned activities.  (Tr. 15, 292.)  She also  maintained good eye contact and was cooperative during examinations.  (Tr. 295, 305, 752.)  She showed no signs of evasiveness, guardedness, or isolation, and her providers did not document verbal or physical aggression, anger, or irritability. (Tr. 15, 295, 305, 752.)

Regarding plaintiff's ability to concentrate, persist, or maintain pace, the ALJ noted that in her function report, plaintiff stated she could not pay attention for long periods and did not finish tasks.   (Tr. 15, 233.)   In treatment, she sometimes reported poor concentration, fluctuating energy, and a lack of motivation, but at other times she reported she had adequate motivation and focused on specific topics such as training her new dog. (Tr. 281, 291, 303, 751.)  Mental status examinations showed no evidence of distractibility, impaired attention or concentration, pressured speech, or psychomotor agitation.  (Tr. 282-83, 752-53.)

Finally, regarding her ability to adapt and manage herself, plaintiff reported that she slept poorly and forgot to bathe and take care of her hair.  (Tr. 16, 229.)  However, she prepared some meals and performed some household chores, including taking out the trash and cleaning up after her dog.  She was able to drive and go out alone when necessary. (Tr. 16, 230-31.)  In her function report, plaintiff reported issues with stress and changes in routine, as well as panic attacks.  (Tr. 234.)  And during treatment, plaintiff regularly reported sleeping only three to four hours a night, panic attacks, and depression.  However, treatment providers did not witness panic attacks during examinations and mental status examinations showed good insight and judgment.  Plaintiff regularly had an appropriate and pleasant affect.  Providers regularly described her as childlike and suggested she

needed to explore adaptive skills to manage her feelings of distress or life stressors.  (Tr. 281-83, 288, 290-91, 294, 303, 735, 792.)

"Assessment of [mental] functional limitations is a complex and highly individualized process that requires [the ALJ] to consider multiple issues and *all r*elevant evidence to obtain a longitudinal picture of your overall degree of functional limitation." *See* 20 C.F.R. § 404.1520a(c)(1) (emphasis added).  Here, the ALJ considered the record as a whole, including examination results and plaintiff's daily activities.  The "longitudinal picture" shows that plaintiff had at most moderate mental limitations.  Thus, the Court concludes the ALJ properly found that plaintiff did not satisfy any mental listing, including Listings 12.04 and 12.15.

### Opinion of Treating Physician Dr.  Gogineni

Plaintiff next argues the ALJ erred in his evaluation of her treating psychiatrist Dr. Gogineni because the ALJ failed to explain how the supportability and consistency factors were considered.  The Court disagrees.  The drastic limitations proposed by Dr. Gogineni were not supported by any explanation and were inconsistent with his own treatment notes.

Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).  The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in making the RFC determination.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The new rules provide that adjudicators evaluate all medical opinions and findings using the factors delineated in the new regulations.  Supportability and consistency are the most important factors and their application must be explained.  Other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's "treatment relationship" with the claimant, including the length,

frequency, purpose and extent of the treating relationship, and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the Administration's disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(b), (c) (2017).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(3).

The ALJ properly considered Dr. Gogineni's opinion. Dr. Gogineni described plaintiff as a veteran with general anxiety disorder, gastroparesis, and chronic vomiting who has been unable to work since 2009. He opined that plaintiff had no useful ability to function in 22 of 25 categories of mental functioning and was unable to meet competitive standards in the remaining three categories. He also opined that plaintiff would be absent from work more than four days per month. (Tr. 761-62.) The ALJ noted the limitations that Dr. Gogineni assessed were "wholly unpersuasive" because they were inconsistent with the medical evidence, which included generally normal mental status examinations. (Tr. 21-22, 295, 305, 752.) Moreover, plaintiff's conditions were described as stable, and she was typically seen for psychiatric appointments every three to four months. There was no indication treatment providers suggested a need for inpatient care, intensive outpatient care, or more frequent psychiatric appointments, even though plaintiff was instructed to obtain counseling. Moreover, the ALJ found Dr. Gogineni did not document any specific medical records or evaluations in support of his opinions (Tr. 22, 734.) The ALJ properly considered Dr. Gogineni's opinion.

**Testimony of non-medical source Cheryl Gentry**

Plaintiff next claims the ALJ erred in not consider the testimony of her grandmother, Cheryl Gentry. The Court disagrees.

Contrary to plaintiff's assertion, the ALJ summarized Ms. Gentry's testimony in the decision. (Tr. 18.) Ms. Gentry testified that plaintiff stays in her room a lot and can only focus on watching television or reading a book for 20 minutes. She can't focus on more than one subject at a time. She has two friends that she spends time with at least once a week. She is afraid of people and doesn't know how to treat them although plaintiff does pretty well when they go out to eat. She makes sure plaintiff goes to her psychiatric appointments, and she thinks plaintiff's psychiatrist has her medications correct right now. It never occurred to her to seek a guardianship of plaintiff. (Tr. 60-66.)

However, Ms. Gentry's testimony is less significant than plaintiff proposes. The issue is not whether plaintiff has some limitations, but whether those limitations were disabling. *Cf. Baker v. Apfel*, 159 F.3d 1140, 1145 (8th Cir. 1998) (holding that while the claimant experienced arthritic pain and headaches, it was not so severe as to be disabling).

To the extent that Ms. Gentry's testimony conflicted with the ALJ's RFC finding, that testimony was not adopted for the same reasons that the ALJ gave for finding plaintiff's subjective complaints not entirely consistent with the evidence. *See Buckner v. Astrue,* 646 F.3d 549, 560 (2011) (holding that a separate finding concerning the claimant's girlfriend's testimony was not necessary because the girlfriend's testimony was inconsistent with the same evidence that the ALJ cited when evaluating the claimant's allegations). The ALJ properly relied on the record evidence that a "reasonable mind" would accept as adequate to support the conclusion that plaintiff could perform a range of unskilled work. *Biestek,* 2019 WL 1428885, at *3.

## VI.  CONCLUSION

For the reasons set forth above, the Court concludes the ALJ did not err in not finding that plaintiff's mental impairments did not satisfy the criteria of listings for mental disorders, in evaluating the opinion evidence of treating psychiatrist Dr. Gogineni, or in considering evidence from non-medical source Cheryl Gentry.  The decision of the Commissioner of Social Security is affirmed.  A separate Judgment Order is issued herewith.

          /s/ David D. Noce      
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 27, 2022.